IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,
   Plaintiff,

v.            CRIMINAL ACTION NO. 2:05CR33

JONATHAN RIFFLE,
   Defendant.

## REPORT AND RECOMMENDATION/OPINION

On October 11, 2005 came the defendant, Jonathan Riffle ("Defendant"), in person and by his counsel, John J. Wallace, IV, and also came the United States ("the Government") by Paul T. Camilletti, its Assistant United States Attorney, for hearing on Defendant's Motion to Suppress [Docket Entry 14] filed September 29, 2005. The Government filed its Response to the Motion on October 6, 2005 [Docket Entry 17]. The Court ruled as a matter of law that the validity of the state search warrant was to be decided on content of the warrant and the application for the warrant and therefor extrinsic evidence was unnecessary.

## Statement of Relevant Facts

Jonathan Riffle was indicted by a grand jury attending the United States District Court for the Northern District of West Virginia on August 17, 2005. The indictment charges Defendant with one count of distribution of methamphetamine (Count One) and one count of possession with intent to distribute methamphetamine and marijuana (Count Two).

A summons was issued and Defendant had an initial appearance on September 1, 2005. He was arraigned and pled "not guilty" to the charges on September 15, 2005.

## The Search Warrant

On March 16, 2005, Trooper C.A. Blevins of the West Virginia State Police appeared before

Randolph County, West Virginia Magistrate Riggleman to apply for a search warrant for premises located at HC 61 Box 74, .8 miles South of State Route 151 in Randolph County, West Virginia. Magistrate Riggleman issued the search warrant. There is no issue regarding this search warrant or its execution. The warrant states that Defendant delivered and possessed with intent to deliver methamphetamine, and that Tpr. Blevins had reason to believe that property, including methamphetamine, precursors of methamphetamine, iodine, lithium batteries, lye, methanol, DMSO2, mineral spirits, muriatic acid, platinum, pseudoephedrine, pumice stone, road flares, starting fluid, matchbook striking pads, toluene, vinegar, aluminum foil, anhydrous ammonia, bed sheets, brake cleaner, camping stove fuel, champagne bottles, coffee filters, cooking oil, cream of tartar, drain cleaner, ephedra, ethyl alcohol, fiberglass resin, grain alcohol, hydrogen and hydrogen chloride, inhalers, and activated charcoal, was concealed in and on the property.

The facts in support of the warrant were stated as follows:

On March 15, 2005, the Undesigned responded to a complaint of subjects doing drugs in a Vehicle, parked in Norton. The undersigned and Tpr. M.A. Agee responded. The undersigned spoke with the subjects in the vehicle and searched the vehicle. The undersigned located a small amount of what appeared to be Methamphetamine wrapped in tin foil. The undersigned spoke with a C.I. who confirmed the substance was crystal meth. The C.I. Stated the methamphetamine was from John Riffle's residence. The C.I. stated he/she has went [sic] to John Riffle's residence in Jimtown several times in the last week and his/her friend has purchased methamphetamine each time from John Riffle. C.I. also states that there is a constant flow of traffic at John Riffles residence of persons purchasing drugs and methamphetamine. C.I. advised Mr. Riffle's residence is located on Jimtown Road, off of Rt. 151, on the left side of the roadway. The undersigned is also aware that Mr. Riffle is currently living with Jillian Kennard. Ms. Kennard is a known drug abuser who has admitted to her probation officer of drug use and has tested positive for THC and Amphetamines. The C.I. did state that they had to wait for several minutes on a recent visit to Mr. Riffle's residence, because he was still cooking the methamphetamine outside the residence. C.I. was unsure exactly where Mr. Riffle was cooking the methamphetamine.

Seven officers, including Tpr. Blevins and Tpr. Agee, executed the search warrant at 6:00

p.m. that same day. Tpr. Blevins knocked on the door of the residence for several minutes without receiving a response. Tpr. Agee then entered the residence through a rear window and unlocked the door. A search indicated no one was present at the residence. The officers searched the residence for illegal drugs and/or illegal drug contraband.

At approximately 6:15 p.m., the officers located a locked Sentry safe in the closet of the rear bathroom. The safe required a number code to open. Tpr. Blevins contacted Magistrate Riggleman in order to obtain a second search warrant for the safe in order to secure it until it could be searched. Tpr. Agee then went to the Randolph County Magistrate Court to complete an affidavit and obtain the search warrant for the safe from Magistrate Riggleman. The other officers remained at the residence. The grounds for the second search warrant are stated as follows:

> While serving a search warrant for namely methamphetamine along with any and all precursers [sic] or chemicals used in the manufacture or use of same [sic]. There was discovered a safe that was located in the bathroom closet. Prior to this search many tips have been given to the WVSP that the drugs were kept in a safe at this residence in a bathroom closet it should be noted that upon a search of the residence this safe was found in a location as described in the many tips we recieved [sic].

Magistrate Riggleman issued the second search warrant. Tpr. Agee returned to the residence at approximately 8:30 p.m. with the search warrant for the safe. The safe was seized at this time.

After several unsuccessful attempts at contacting Defendant, the safe was forced open. A search of the safe revealed numerous controlled substances and drug contraband, including methamphetamine, marijuana, pills, needles, and $2, 184.38 in U.S. currency.

**Contentions of the Parties**

The sole issue in dispute is the search of the locked safe. Defendant contends the Court must suppress the evidence seized by the police during the search of the safe because the probable cause stated in the second warrant lacks an evaluation of the veracity or basis of knowledge of

3

hearsay tips.

The United States argues that the officers did have corroborating information from individuals, other than the original C.I., that Defendant was manufacturing and distributing methamphetamine from his residence and that he often kept drugs in a safe within his residence. The United States also argues that, even if the second search warrant is deficient, the search come under the Leon good faith exception. United States v. Leon, 468 U.S. 897 (1984).

**Discussion**

"The right to privacy in one's home is a most important interest protected by the Fourth Amendment and a continuing theme in constitutional jurisprudence." United States v. Wilhelm, 80 F.3d 116 (4th Cir. 1996). "Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." Payton v. New York, 445 U.S. 573, 585, 100 S.Ct. 1371, 1379, 63 L.Ed.2d 639 (1980) (quoting United States v. United States District Court, 407 U.S. 297, 313, 92 S.Ct. 2125, 2135, 32 L.Ed.2d 752 (1972)). "At the very core [of the Fourth Amendment] stands the right of a man to retreat into his home and there be free from unreasonable government intrusion." Silverman v. United States, 365 U.S. 505, 511, 81 S.Ct. 679, 682, 5 L.Ed.2d 734 (1961).

The Fourth Amendment to the Constitution of the United States provides:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized. There is probable cause to search a home if there is a fair probability that evidence of a crime is located within the residence. *See United States v. Murphy*, 241 F.3d 447, 457 (6th Cir. 2001). Whether probable cause exists must be determined "under the totality of the circumstances.

See Illinois v. Gates, 462 U.S. 213 (1983).

The undersigned first notes the physical entry into the house pursuant to the first search

4

warrant is not at issue here. The search warrant for the residence itself was valid, the police were therefore legally inside Defendant's residence, and the search of the house itself was therefore valid. In fact, the police were still inside the residence, still conducting this valid search, when Tpr. Agee returned with the search warrant for the safe.

The undersigned also notes that this court recently held that a search warrant that did not expressly list a safe encompassed the safe, even though a separate act of entry or opening was required to complete the search. See United States v. Burns, CRIMINAL ACTION NO. 1:05CR50-5 (N.D.W.Va. 2005). In that case there was no dispute that the search warrant did not list a safe as an item to be seized. There was also no dispute that the officers did not get a second search warrant to search the locked safe.

The court noted it has long been held that:

> A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search. Thus, a warrant that authorized an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found.

United States v. Ross, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). There is no difference between a safe and a closet or chest, except that it may be locked. If the safe had not been locked, there is no question the police could have looked in it. A finding that the police were not permitted to open the safe could lead to the absurd result that a criminal need only lock up all contraband on the premises to force police to repeatedly stop searching and obtain another warrant.

Relying on Ross, the Eighth Circuit found no merit to a defendant's assertion that officers searching his residence pursuant to a valid warrant had no authority to remove a floor safe from his bedroom and later open it at the police station without his consent. United States. v. Johnson, 709

5

F.2d 505 (1983). The court found that a search warrant authorizing the search of defined premises also authorized the search of containers found on that premises which reasonably might conceal items listed in the warrant, and held:

> Because they were authorized to open it under the warrant at that time they did not need a second warrant to complete the search of the safe at the police station later.

Id. More recently, the Tenth Circuit agreed. Citing Ross, the court held:

> Following this rule, we have allowed the search of a locked safe where the items in the search warrant were likely to be found therein . . . Here the warrant directed the officers to seize cash. A locked safe is a ""likely source" for cash. Therefore, as the district court found, the search warrant directing the officers to search for cash authorized the opening of the safes. No additional warrant was necessary.

United States v. Pringle, 53 Fed. Appx. 65 (10th Cir. 2002)(unpublished). In this case, the undersigned finds the safe "reasonably might conceal items listed in the warrant," such as illegal drugs.

Notably, in the case at bar, the police did go back to the Magistrate to obtain a second search warrant expressly for the locked safe. It seems illogical and unreasonable to require that warrant to be perfect where courts have held a second warrant unnecessary in the first place. Nevertheless, the undersigned has reviewed the search warrant at issue. In a review of an issued search warrant, "great deference" is given to the issuing judicial officer's probable cause determination. United States v. Blackwood, 913 F.2d139, 142 (4th Cir. 1990). The test on review is whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). To that end, the reviewing court does not conduct a de novo review but instead limits itself to the information presented to the magistrate who issued the warrant. Id. See also United States v. Wilhelm, 80 F. 3d. 116, 118 (4th Cir. 1996). The determination of whether Magistrate Riggleman had probable cause to issue the warrant to search

the locked safe is made by answering the question: From a totality of the circumstances presented to the issuing judge, was there "a fair probability that contraband or evidence of a crime" would be found in the safe? Illinois v. Gates, 462 U.S. 213, 238 (1983). The undersigned believes there was. It is not lost on the undersigned that Magistrate Riggleman signed both warrants. He was therefore aware of all the facts supporting probable cause for the search of the residence. If the first search warrant had simply stated the police wished to search any safes, the undersigned does not doubt the Magistrate would still have issued the warrant. In other words, the probable cause to search the residence under the first warrant added to the grounds for the second warrant.

Even assuming, arguendo, that the first search warrant did not permit the search of the locked safe, and also that the search warrant was determined not to have been supported by probable cause, the undersigned finds the evidence seized from the safe would still be admissible under the good faith exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The exclusionary rule operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." United States v. Calandra, 414 U.S. 338, 94 S. Ct. 613, 38 L. Ed. 2d 561 (1974). In Leon, the Supreme Court explained the reason for the exclusionary rule:

> First, the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. Second, there exists no evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires application of the extreme sanction of exclusion. Third, and most important, we discern no basis, and are offered none, for believing that exclusion of evidence seized pursuant to a warrant will have a significant deterrent effect on the issuing judge or magistrate.

468 U.S. 897, 915, 104 S. Ct. 3405, 3417. Further:

> If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.

Id. at 918, 104 S. Ct. 3405, 3419. The Supreme Court concluded:

> [T]he marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion.

Id. at 922, 104 S. Ct. 3405, 3420. Therefore, the question of whether the good faith exception to the exclusionary rule should be applied to suppress evidence depends on whether suppression of the evidence would have the desired effect of deterring police misconduct. In most cases:

> [W]hen an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope . . . . there is no police illegality and thus nothing to deter.

Id. at 920-21, 104 S. Ct. 3405, 3419.

The Fourth Circuit followed the Supreme Court's line of reasoning in United States v. Lalor:

> Under the good faith exception to the warrant requirement, evidence obtained from an invalidated search warrant will be suppressed only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

996 F.2d 1578 (4th Cir. 1993). Accord United States v. Bynum, 293 F.3d 192, 197-199 (4th Cir. 2002) (applying good faith exception where "affidavit contained sufficient indicia of probable cause so as not to render reliance on it totally unreasonable," reversing district court's suppression of evidence); and United States v. Cluchette, 24 F.3d 577 (4th Cir. 1994) (applying good faith exception to search warrant issued by state judge over telephone, declining to determine whether warrant was valid under state law.) In other words, the good faith exception applies unless "a reasonably well-trained officer . . . [should] have known that the search was illegal despite the magistrate's

8

authorization." Leon, 468 U.S. at 922 n.23.

The Fourth Circuit has noted "four situations in which an officer's reliance on a search warrant would not be reasonable," and the good faith exception would therefore not apply:

> (1) the magistrate was misled by information in an affidavit that the officer knew was false or would have known was false except for the officer's reckless disregard of the truth;
> (2) the magistrate wholly abandoned his detached and neutral judicial role;
> (3) the warrant was based on an affidavit that was so lacking in indicia of probable cause as to render official belief in it existence entirely unreasonable; and
> (4) the warrant was so facially deficient, by failing to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid.

United States v. Hyppolite, 65 F.3d 1151, 1156 (4th Cir. 1995), quoting Leon, 468 U.S. at 923.

The undersigned does not find any of the four situations which would make the good faith exception inapplicable exist in this case. In fact, the undersigned finds the officers went out of their way in good faith to obtain a second search warrant. For all the above reasons, the undersigned finds the officers' reliance on the search warrant issued by Magistrate Riggleman was objectively reasonable. The good faith exception therefore renders the evidence seized in the search admissible, even if were determine the search warrant lacked probable cause.

For all the above reasons, the undersigned finds the search of the locked safe was valid and any evidence seized pursuant to that search is admissible.

## RECOMMENDATION

For the reasons herein stated, it is **RECOMMENDED** that Defendant's Motion To Suppress [Docket Entry 14] be **DENIED.**

Any party may, within ten (10) days after being served with a copy of this Report and Recommendation, file with the Clerk of the Court written objections identifying the portions of the

Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to the Honorable Robert E. Maxwell, United States District Judge. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such report and recommendation. 28 U.S.C. § 636(b)(1); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984), <u>cert. denied</u>, 467 U.S. 1208 (1984); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>Thomas v. Arn,</u> 474 U.S. 140 (1985).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to counsel of record.

Respectfully submitted this 14 day of October, 2005.

/s *John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE